CHARLES FARMER, ADMINISTRATOR OF THE ESTATE OF
ELMER L. VAN DUSEN, DECEASED, v. THE MICHI-
GAN CENTRAL RAILROAD COMPANY.

*Railroad companies—Injury to switchman of adjacent road—Con-
tributory negligence.*

Where, in a negligence case, it appears that the accident would
not have happened but for the fact that the decedent volun-
tarily and unnecessarily occupied a place of great danger, nor
even then but for his own inattention, there is no escape from
the conviction that his negligence contributed to his death,
which, under the well-settled rule, precludes a recovery.

Error to Washtenaw. (Kinne, J.) Argued January 17,
1894. Decided February 20, 1894.

Negligence case. Defendant brings error. Reversed.
The facts are stated in the opinion.

*M. V. & R. A. Montgomery,* for appellant.

*A. J. Sawyer,* for plaintiff.

HOOKER, J. The Toledo, Ann Arbor & North Michi-
gan Railroad crosses the Michigan Central Railroad at Ann
Arbor, above grade, and nearly at right angles. The
tracks of the two companies are connected by a Y, over
which a large number of cars are daily transferred from
one road to the other. At the point involved in this case,
the Michigan Central Company has four tracks, numbered
from 1 to 4 upon the diagram of the premises on next page.
The outer one, marked 4, is the main track. No. 3 is
its long siding. No. 2 is another siding, kept for the
deposit of cars from the Toledo & Ann Arbor road; while
No. 1 is still another siding, the use of which does not

appear to have any significance.	It is a track which
branches from No. 2, and is connected by the switch B,
as is a short track connecting sidings numbered 2 and 3,
the connection with No. 3 being at switch marked C.

On the day in question, the engine of the Toledo & 
Ann Arbor Company was standing on track No. 2, await-
ing the return of the Michigan Central engine over the Y
from the Toledo & Ann Arbor yard.	It necessarily stood
sufficiently far north of switch B to permit the Central
engine to clear it as it passed over the short track from
track 2, with which the Y was connected, to track 3, which,
as the diagram shows, must have brought its tender near
to switch C.	Plaintiff's intestate was a switchman, employed
by the Toledo & Ann Arbor Company, and, after the return
of the Central engine, he threw the switch so that the
Toledo & Ann Arbor engine could go upon the Y, and
crossed the track, and stood with a fellow brakeman, one
Wright, awaiting his engine, a signal being given by Wright
to the engineer.	These men were expected to get upon the
footboards of the engine as it passed,—Wright in front, and
Van Dusen in the rear.	The testimony shows that the
engine came down slowly for that purpose, attaining a
speed of five or six miles an hour, when Wright stepped
on, leaving Van Dusen standing between tracks 2 and 3.
Meantime the Central engine backed up to and beyond
switch C.	It had a box car attached to its pilot, so that
on its return from switch C it was pushing the car.	After
this engine had passed switch C, the Michigan Central
brakeman threw the switch so that it would return upon
track 3, and, when it came by, climbed upon the box car.
He testifies—and there is no testimony to the contrary—
that as he climbed up the side of the car, when near the
top, he saw Van Dusen standing with his heels close to
track 3, apparently not noticing the approaching car, and
he tried to attract his attention by shouting and waiving

his arms, but failed, and Van Dusen was struck by the car. At this time a heavy freight train was passing upon track 4, running about 20 miles an hour. Van Dusen was killed, and this action is brought to recover damages for alleged negligence.

It is manifest that the box car must have overtaken and passed the rear end of the tender of the Toledo & Ann Arbor engine before reaching Van Dusen. The attention of the Toledo & Ann Arbor crew was attracted by the shouting of the Central brakeman, who then pointed to Van Dusen, who was, when their notice was attracted, under the wheels of the Michigan Central engine. The distance between the outside of the rails of the tracks 2 and 3 is 7 feet and 6 inches, and a box car is shown to project from 22 to 26 inches over the rail. From a verdict and judgment for the plaintiff of $4,500, the defendant appeals.

The uncontradicted testimony of Foster, the Michigan Central brakeman,—the only eye-witness of the accident,—places Van Dusen standing close to track 3, watching his own engine. Foster is corroborated in this by the fact that he was struck, which he could not have been had he been midway between the tracks. We must conclude that he did not notice that this car and engine were coming, for, had he done so, he would have avoided them. It is impossible to avoid the conviction that it was inattention that prevented his seeing his danger. It was a place of danger, and this should have been known to him, for he was familiar with railroads and their methods. He had seen the Central engine pass, and probably expected its return. It was not necessary that he should be between tracks 2 and 3 to mount his engine, for all the evidence shows that he could have mounted from the other side. The pile of scrap iron cuts but little, if any, figure; for Wright says that, by going a few feet further north from switch B, he

could have found a convenient place to get upon his engine. Other testimony shows the same. He, in fact, went about the same, if not a greater, distance to the place where he was killed. It was not necessary for him to be that side to give the signal, for it was Wright, and not he, who gave it. Moreover, with his engine going but five or six miles an hour, he could have safely stood at a safe distance from track 3. It being patent that the accident would not have happened but for the fact that the deceased voluntarily and unnecessarily occupied a place of great danger, nor even then but for his own inattention, there is no escape from the conviction that his negligence contributed to his death, which, under the well-settled rule, precludes a recovery. Under the evidence, the trial judge should have directed a verdict for the defendant.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.